| | |
|---|---|
| ARAPAHOE COUNTY DISTRICT COURT, COLORADO<br>7325 S. Potomac Street, Centennial, CO 80112 | DATE FILED: December 21, 2023 1:34 PM<br>FILING ID: E7D8CFC8C9A84<br>CASE NUMBER: 2023CV32430 |
| Plaintiff(s): **NICHOLE L. CLARK**, an individual and **VALITA A. LEONARD**, an individual;<br><br>v.<br><br>Defendant(s): **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, an Illinois Corporation. | |
| | Court Use Only |
| **Attorneys for Plaintiff:**<br>Jonathan D. Stine, Atty. Reg. No. 38925<br>Nelson Boyle, Atty. Reg. No. 39525<br>The Paul Wilkinson Law Firm, LLC<br>999 Jasmine St.<br>Denver, Colorado 80220<br> (303) 333-7285<br>Jonathan@pwlfllc.com, Nelson@pwlfllc.com<br><br>John Springer, Atty. Reg. No. 3458<br>15394 E. Monmouth Pl.,<br>Aurora, Colorado 80015-1721<br> (303) 653-1006<br>jlspringer01@aol.com | Case No.:<br><br>Div:<br><br>Ctrm: |

**CLASS ACTION COMPLAINT FOR DAMAGES AND DECLARATORY OR INJUNCTIVE RELIEF, WITH JURY DEMAND**

COME NOW Plaintiffs Nichole Clark and Valita Leonard, on behalf of themselves and all others similarly situated, and bring this action against State Farm Mutual Automobile Insurance Company (State Farm) to obtain damages, restitution, and injunctive or declaratory relief from State Farm. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of their counsel, and facts that are a matter of public record.

## INTRODUCTION AND NATURE OF THIS ACTION

1.      This is a consumer class action brought against State Farm under the Colorado Consumer Protection Act (CCPA), § 6-1-101, et seq., C.R.S.

2.      At all relevant times, the Class Representatives, class members, and Other Named

Insureds were State Farm's customers/consumers and policyholders, who purchased and paid premiums for multiple State Farm automobile, motorcycle, or motor vehicle liability insurance policies ("policies"), under which State Farm insured more than one of their policies and provided bodily injury liability coverage on each of those vehicles and provided uninsured/underinsured (UM/UIM) bodily injury coverage ("UM/UIM coverage") on one but not all of those policies.

3.    State Farm engaged in deceptive trade practices, while courting the Class Representatives, class members, or other Named Insureds under the policies ("Other Named Insured"), as customers/consumers in the course of its business as an insurer and in signing them up as owners of policies, while breaching its statutory duty under § 6-1-105(1)(u), C.R.S., to not fail to disclose material information concerning the policies, which State Farm knew when it sold the policies to Class Representatives, class members, and Other Named Insureds, with the intent of inducing the Class Representatives, class members, or Other Named Insureds, to reject UM/UIM coverage on all but one of multiple policies in connection with entering into transactions for the sale of those Policies.

4.    The undisclosed material information that State Farm omitted from the Rejection Forms, which was known to State Farm and unknown to the Class Representatives, class members, or Other Named Insureds who signed State Farm's Rejection Form, was that a State Farm policyholder would derive a meaningful benefit from having UM/UIM coverage provided on each of the multiple policies he or she owned and were insured by State Farm, namely that the maximum limit of UM/UIM coverage on each policy can be aggregated or combined to increase the total amount of such coverage that would be available to apply to any collision.

5.    At all relevant times a State Farm policyholder had the potential opportunity or

ability to aggregate or combine (stack) the maximum UM/UIM coverage limit on each policy and thereby increase the total amount of such coverage that would be available to apply to any collision. (This material information is referred to below as "Stacking Information.")

6.      By engaging in the above-mentioned deceptive trade practices, State Farm caused each Class Representative or class member to suffer an injury in fact to a legally protected interest when State Farm induced the Class Representatives, class members, or Other Named Insureds, to reject UM/UIM coverage on all but one of the multiple policies.

7.      Without those deceptive trade practices, each of the Class Representatives and class members would have had available UM/UIM coverage on each of the policies where such coverage had been rejected and would have had the opportunity to stack the rejected coverage to increase the total amount of such coverage that would be available to apply to any collision where a named insured sustained bodily injury, caused by the fault of an uninsured or underinsured motorist.

8.      As further alleged below, State Farm's deceptive trade practices have had, and still have, a significant public impact as actual or potential consumers of State Farm policies.

9.      Sometime after each Class Representative, class member, or other Named Insured rejected UM/UIM coverage on all but one of multiple policies, each Class Representative or class member sustained bodily injury in a motor vehicle crash, caused by the fault of an uninsured or underinsured motorist; suffered damage, harm, and losses that exceeded the UM/UIM coverage available under a single policy where UM/UIM coverage had not been rejected; and presented a policy-limits claim for UM/UIM benefits provided on a single policy, which State Farm paid.

10.     But for the fact that each of the Class Representatives, class members, and Other

Named Insureds had rejected UM/UIM coverage on all but one of multiple policies, using State Farm's Rejection Form, each of the Class Representatives and class members would have been able to stack the maximum UM/UIM coverage available to them with the maximum UM/UIM coverage limit on each policy where such coverage had been rejected using the Rejection Form.

11.     If they had been able to do so, the Class Representatives and class members would thereby have had more UM/UIM coverage available to apply to any collision, including the collisions for which State Farm had paid policy limits.

12.     The claims are appropriate for class adjudication since the class is numerous, the action presents common questions of law and fact about State Farm's deceptive trade practices, the named plaintiffs' claims are typical of the class, and they have retained competent class counsel who will adequately represent the class.

13.     Plaintiffs seek money damages and injunctive or declaratory relief on behalf of themselves and the class. Damages will be individual to each of the class members but will also have some commonality.

## PARTIES

### A.  Class Representatives

14.     Plaintiff Nichole L. Clark is a citizen of Colorado who resides in Arapahoe County with her husband, Bevin Clark.

15.     At all relevant times, the Clarks owned three vehicles that were insured under separate policies issued by State Farm.

16.     Plaintiff Valita A. Leonard is a citizen of Colorado who resides in Adams County with her husband, Shawn Leonard.

17.     At all relevant times, the Leonards owned four vehicles that were insured under separate policies issued by State Farm, under which Shawn and Valita Leonard were Named Insureds/household residents.

**B.  Defendant**

18.     Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois corporation, registered to do and continuously doing business throughout Colorado at all times relevant to this lawsuit.

**JURISDICTION AND VENUE**

19.     As a court of general jurisdiction for the State of Colorado, this Court has jurisdiction over this action under §§ 13-1-124(1)(a) & (d), C.R.S., and 13-51-105, C.R.S., C.R.C.P. 57(a), and Art. VI., § 9 of the Colorado Constitution.

20.     Federal diversity jurisdiction under 28 U.S.C. § 1332(a) requires diversity of citizenship of the parties and a sum or value in controversy of at least $75,000 per individual plaintiff.

21.     The damages, attorney fees, and costs of individual class members may not be aggregated to meet the jurisdictional amount for federal diversity jurisdiction. See *Martin v. Franklin Cap. Corp.*, 251 F.3d 1284 (10th Cir. 2001) (each class member's claim must satisfy the jurisdictional amount for jurisdiction to obtain).

22.     Thus, this action is not subject to federal diversity jurisdiction since the amount in controversy as to each proposed individual class member does not equal or exceed $75,000.00.

23.     The damages, attorney fees, and costs of one of the named plaintiff Class Representatives will be less than $75,000.00.

24.     And upon information and belief, that is true for at least one of the proposed class members.

25.     State court is the more appropriate forum for this action as it pertains solely to issues of state law. No federal question is asserted, and plaintiffs' state-law claims are not federally pre-empted.

26.     Colorado law applies, and may be conditionally applied, to all of plaintiffs' claims on behalf of themselves and the class.

27.     All of the acts of which the plaintiffs complain stem from conduct, most or all of which occurred in Colorado.

28.     Upon information and belief, State Farm has often availed itself of the Colorado state court system.

29.     Venue is proper under § 6-1-103, C.R.S., and C.R.C.P. Rule 98(c) since Plaintiff Nichole Clark resides in Arapahoe County and the alleged deceptive trade practices related to Plaintiff Nichole Clark occurred in Arapahoe County.

## GENERAL ALLEGATIONS

30.     At all relevant times, the CCPA and § 10-4-609, C.R.S., were legislative enactments of the State of Colorado that were in full force and effect.

31.     At all relevant times, § 10-4-609(1)(a), C.R.S., provided that, except in the event that a named insured has rejected such coverage in writing, an automobile or motor vehicle insurance policy issued for delivery in Colorado must provide UM/UIM coverage for protection of persons insured by the policy who are legally entitled to recover compensatory damages for bodily injury, sickness, disease, or death from the owner or driver of an uninsured or underinsured

motor vehicle.

32.    At all relevant times, § 10-4-609(4), C.R.S., provided that UM/UIM coverage must include coverage for compensatory damages for bodily injury which an insured is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle.

33.    At all relevant times, and as used throughout this Complaint, the terms "to stack" or "stacking" meant the opportunity an insured has for aggregating or combining the maximum UM/UIM coverage limits on two or more separate motor vehicle liability insurance policies for the purpose of increasing the total amount of available UM/UIM coverage that would have been available and would have applied to claims related to any collision caused by the fault of the owner or operator of an uninsured or underinsured motor vehicle where the primary policy provides inadequate coverage for the full amount of compensatory damages that he or she has a legal right to recover for bodily injury from the uninsured or underinsured motorist.

34.    Such opportunity for aggregating, combining, or stacking the maximum UM/UIM limits on two or more policies is referred to throughout this Complaint as "Stacking Information."

35.    Under § 10-3-609, insurers must offer UM/UIM coverage for every vehicle on which they provide liability coverage in an amount equal to or exceeding the liability coverage amount.

36.    Each of the Class Representatives, class members, and Other Named Insureds asked State Farm to insure their vehicles, filled out forms and signed forms to obtain insurance coverage from State Farm. (This process is referred to herein as the "Application Process.")

37.    Throughout this Complaint, the use of the word "vehicles" as it related to the Class Representatives, class members, and Other Named Insureds includes motorcycles, as well as cars,

pickup trucks, vans, and all other vehicles covered by State Farm under UM/UIM coverage that was provided in policies it issued in Colorado during the relevant times.

38.    Like the Class Representatives, at all relevant times, all other members of the class are or were insured policyholders and customers/consumers of State Farm.

39.    At all relevant times, each Class Representative and class member owned multiple vehicles, each of which was insured under a separate policy issued by State Farm.

40.    A Class Representative, class member, or Other Named Insured under the State Farm policies, had rejected UM/UIM coverage on all but one of such policies, using State Farm's Rejection Form.

41.    A policy that provided UM/UIM coverage is referred to herein as a "UM/UIM policy" and one without UM/UIM coverage is referred to as a "non-UM/UIM policy."

42.    At all relevant times, all of the policies owned by the Class Representatives and class members provided bodily injury liability coverage.

43.    Similar to the coverage indicated for the Class Representatives above, at all relevant times, each class member:

　　　a.    owned multiple vehicles that were insured under separate policies issued by State Farm, each of which provided bodily injury liability coverage; and

　　　b.    for which they or an Other Named Insured had rejected UM/UIM coverage all but one of such policies using State Farm's Rejection Form.

44.    Upon information and belief, at all relevant times, as part of the Application Process, State Farm used an "Acknowledgement of Coverage Selection or Rejection" form (the "Rejection Form").

45.     Attached hereto are two slightly different examples of this Rejection Form, which are marked at the bottom as form Nos. 1003474 CO 8 2001 140879 201 10-23-2013 (**Exhibit 1**) and 1003474 CO 9 2002 144818 200 04-29-2016 (**Exhibit 2**).

46.     The differences between those two versions of the Rejection Form are not material differences for purposes of the claims presented here and the differences could be overlooked or, if necessary, used to define subclasses.

47.     Upon information and belief, State Farm has used other slightly different versions of this Rejection Form during the time relevant to this Complaint.

48.     Upon information and belief, the minimal differences between versions of State Farm's Rejection Form are not material differences that would affect the class-wide issues here and the differences could be overlooked or, if necessary, used to define subclasses.

49.     **Exhibit 2** (the 1003474 CO 9 2002 144818 200 04-29-2016 version of the Rejection Form) reads, as follows:

Acknowledgment of Coverage

Selection or Rejection

Uninsured Motor Vehicle Coverage – Colorado

Colorado law requires that each motor vehicle liability policy delivered or Issued in Colorado insuring motor vehicles licensed for highway use in Colorado provide Uninsured Motor Vehicle Coverage. This coverage provides protection for persons insured who are legally entitled to recover damages for bodily Injury, sickness, or disease, including death, from owners or operators of either uninsured motor vehicles or underinsured motor vehicles. The named insured may reject such coverage and such rejection must be in writing.

Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, selected on one policy insuring a motor vehicle owned and insured by you or any family member who resides in your household will apply to any accident for which the selected Uninsured Motor Vehicle Coverage is payable for

that bodily injury, sickness, or disease, Including death. The described vehicle on that one policy need not be involved in the accident for Uninsured Motor Vehicle Coverage to apply.

I acknowledge and agree that I have been offered Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, with limits equal to my Liability Coverage limits for bodily injury and instead:

__ I reject Uninsured Motor Vehicle Coverage limits equal to my Liability Coverage limits for bodily injury and select lower Uninsured Motor Vehicle Coverage limits of $ _____ [each person] / $ _____ [each accident] on this policy.

__ I reject Uninsured Motor Vehicle Coverage on this policy.

I understand and agree that, unless a named insured makes a written request for additional coverage or for coverage more extensive than that provided on a prior policy, this acknowledgment of coverage selection or rejection shall be:

(1) binding on all persons insured under the policy; and

(2) applicable to the policy of insurance on the vehicle described below and to any renewal or replacement policy issued by the same insurer or affiliated insurer.

[The Rejection Form includes blank lines to fill in vehicle year, vehicle make and model, VIN, application/policy number, agent code, named insureds/applicants appearing on application or policy, the "Signature of any Named Insured/applicant," and the date.]

50.    Upon information and belief, State Farm, acting through its agents and their employees, used the Rejection Form as part of the Application Process for the policies covering all Class Representatives and class members and provided Rejection Forms to them for all but one of their policies.

51.    Upon information and belief, State Farm provided one or more Rejection Forms to each of the Class Representatives, class members, and Other Named Insureds with the intent of inducing them to reject UM/UIM coverage on the policy/policies described in the Rejection Form(s).

52.     As the result of the Class Representatives, class members, and Other Named Insureds signing those State Farm Rejection Form(s), State Farm issued multiple policies to each of them that provided UM/UIM coverage on only one of the policies.

## CLASS REPRESENTATIVES' EXPERIENCES

### A.  Class Representatives—The Clarks

53.     At all relevant times, State Farm insured three vehicles owned by the Clarks under separate policies, as follows:

a.     2013 Kia Soul Sport WG (VIN ending 56275) under State Farm Policy No. 408 8774-E20-06, with a $25,000 per-person limit for bodily injury liability coverage and a $25,000 per-person limit for UM/UIM bodily injury coverage.

b.     2007 Ford Escape Sport WG (VIN ending 19029) under State Farm Policy No. 408 8775-E20-06, with a $25,000 per-person limit for bodily injury liability coverage and no UM/UIM bodily injury coverage.

c.     2008 Toyota Tacoma Pickup (VIN ending 20564) under State Farm Policy No. 490 5325-F23-06, with a $25,000 per-person limit for bodily injury liability coverage and no UM/UIM bodily injury coverage.

54.     Upon being presented two Rejection Forms that did not disclose the Stacking Information, Bevin Clark (as an "Other Named Insured") signed two Rejection Forms, which rejected UM/UIM coverage on the policies related to the 2007 Ford Escape Sport WG and the 2008 Toyota Tacoma Pickup, respectively.

55.     In so doing, Bevin Clark justifiably relied on State Farm to have disclosed in its Rejection Forms all material information related to the transaction, which should have included

the Stacking Information.

56.    Because Bevin Clark signed the Rejection Forms, State Farm only provided Nichole Clark with $25,000 UM/UIM bodily injury coverage (as indicated above) on the policy related to the 2013 Kia Soul Sport WG.

57.    Nichole Clark sustained bodily injury in a car crash in October 2021, caused by the fault of an underinsured driver.

58.    Because of that crash, she suffered injuries, damages, and losses—her economic losses alone totaled at least $281,192.50.

59.    Nichole Clark presented a claim to State Farm for UM/UIM bodily injury policy limits on the one available UM/UIM policy she had through State Farm, namely the policy related to the 2013 Kia Soul WG.

60.    State Farm paid Nichole Clark the policy limits of $25,000 on her UM/UIM policy related to the 2013 Kia Soul WG.

61.    Nichole Clark's recovery of the $25,000 in policy limits from State Farm and her recovery of the at-fault driver's liability policy did not fully compensate her for her injuries, damages, and losses.

62.    If Nichole Clark had had $25,000 of UM/UIM bodily injury coverage available to her on each of the policies related to the Clarks' other two vehicles, she still would not have recovered enough to be fully compensated on her UM/UIM claim; but it would have helped her get closer to being made whole.

**B.  Class Representatives—The Leonards**

63.    At all relevant times, State Farm insured four vehicles owned by the Leonards under

separate policies, as follows:

      a.    1996 Honda Odyssey Van (VIN ending 06090) under State Farm Policy No. 391 8839-E23-06B, with a $250,000 per-person limit for bodily injury liability coverage and a $250,000 per-person limit for UM/UIM bodily injury coverage.

      b.    2019 Infiniti QX50 Sport WG (VIN ending 21514) under State Farm Policy No. 170 6248-F30-06N, with a $250,000 per-person limit for bodily injury liability coverage and no UM/UIM bodily injury coverage.

      c.    2004 Hyundai Santa Fe Sport WG (VIN ending 54773) under State Farm Policy No. 141 9726-D05-06H, with a $250,000 per-person limit for bodily injury liability coverage and no UM/UIM bodily injury coverage.

      d.    1976 Chevrolet Corvette 2DR (VIN ending 31334) under State Farm Policy No. 270 9249-D01-06M, with no bodily injury liability coverage and no UM/UIM bodily injury coverage.

64.    Upon being presented three Rejection Forms that did not disclose the Stacking Information Valita Leonard or another insured/household resident signed the Rejection Forms, thereby rejecting UM/UIM coverage on the policies related to the 2019 Infiniti QX50 Sport WG, the 2004 Hyundai Santa Fe Sport WG, and the 1976 Chevrolet Corvette 2DR, respectively.

65.    In so doing, Valita Leonard or another insured/household resident justifiably relied on State Farm to have disclosed in its Rejection Forms all material information related to the transaction, which should have included the Stacking Information.

66.    Because Valita Leonard signed the Rejection Forms, State Farm only provided the Leonards with $250,000 UM/UIM bodily injury coverage on one policy, viz: the policy related to

the 1996 Honda Odyssey Van.

67.     Valita Leonard sustained bodily injury in a car crash in May 2022, caused by the fault of an underinsured driver.

68.     Because of her bodily injury, she sustained harm, damage, and losses totaling at least $500,000.

69.     Valita Leonard presented a claim to State Farm for UM/UIM bodily injury policy limits on the one available UM/UIM policy she had through State Farm.

70.     State Farm paid Valita Leonard the policy limits of $250,000 on her State Farm policy related to the 1996 Honda Odyssey Van.

71.     Valita Leonard's recovery of the $250,000 in policy limits from State Farm and her recovery of the policy limits of the at-fault driver's liability policy did not fully compensate her for her bodily injury and the resulting harm, damage, and losses she sustained.

72.     If Valita Leonard had had more UM/UIM bodily injury coverage available to her on each of the policies related to the Leonards' other three vehicles, she would have been fully compensated on her on her UM/UIM claim.

**CLASS ALLEGATIONS**

73.     The Class Representatives bring this action as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed class and seek to certify and maintain it as a class action under C.R.C.P. 23(a), (b)(2), and (b)(3).

74.     This action may be properly maintained as a class action since it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of C.R.C.P. 23.

75.    Under C.R.C.P. 23, Plaintiffs bring all claims herein individually and as a class action for the class defined below.

76.    The requirements of C.R.C.P. 23(a), (b)(2), and (b)(3) are met with respect to the class defined below.

77.    The Class Representatives propose the following class definition, subject to amendment, as appropriate:

> a.    All State Farm customers/consumers in Colorado who (i) owned more than one vehicle insured by State Farm that qualified for UM/UIM bodily injury coverage; (ii) were injured in a collision and suffered bodily injury and related harm, damage, and/or losses that exceeded the UM/UIM bodily injury policy limits available to them after they or an Other Named Insured had executed a Rejection Form for all but one of the policies related to those vehicles; (iii) Received payments from State Farm for the full amount of the UM/UIM bodily injury policy limits available on their single State Farm auto policy that provided UM/UIM coverage; and (iv) would have recovered additional money for their injuries, damage, and/or losses if they or an Other Named Insured had not executed the Rejection Form(s) and had instead purchased additional UM/UIM bodily injury coverage from State Farm on all their policies.

78.    **Excluded** from the class are all State Farm auto policyholders and those insured under their policies who, either themselves or an Other Named Insured:

> a.    rejected all UM/UIM coverage on all policies related to vehicles they insured through State Farm;

> b.    opted not to sign the Rejection Form;

> c.    have never had a UM/UIM claim that exceeded bodily injury policy limits on their UM/UIM bodily injury policies;

> d.    failed to pay their premiums.

79.    Excluded also from the class are

> a.    State Farm's directors and officers, along with their successors, heirs, and

assigns;

b.    employees of State Farm's affiliates and any entity over which State Farm has direct control, along with their successors, heirs, and assigns;

c.    State Farm's legal representatives, attorneys, along with their successors, heirs, and assigns; And

d.    members of the judiciary to whom this case is assigned, their families, and members of their staff, along with their successors, heirs, and assigns.

80.    The Class Representatives reserve the right to amend or modify the class definitions with greater specificity, divide the classes into separate classes or subclasses, or any combination of those amendments/modifications.

81.    The proposed class meets the criteria for certification because the Class Representatives can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**Numerosity:**

82.    The members of the class are so numerous that joinder of all of them is impracticable.

83.    The exact number of class members is unknown to plaintiffs at this time.

84.    Based on information and belief, the number of class members is well into the thousands.

**Commonality:**

85.    There are questions of law and fact common to the class, which predominate over any questions affecting only individual class members.

86.     These common questions of law and fact include, without limitation:

a.      Whether State Farm engaged in a deceptive trade practice by failing to disclose the Stacking Information in its Rejection Form in violation of the CCPA, including §6-1-105(1)(u), C.R.S.

b.      Whether the different versions of the Rejection Form were substantially the same.

c.      Whether State Farm knew the Stacking Information before it prepared and used each of the versions of its Rejection Form.

d.      Whether the class members or Other Named Insureds justifiably relied on State Farm to disclose all material information related to the policies, which should have included the Stacking information;

e.      Whether State Farm omitted the Stacking Information from its Rejection Form with intent to induce the class members and Other Named Insureds to reject UM/UIM coverage on all but one of multiple policies in connection with entering into transactions for the sale of such policies;

f.      Whether State Farm's deceptive trade practices caused the class members to suffer injuries or damages by losing the potential opportunity to stack the rejected UM/UIM coverage on multiple policies and thereby increase the total amount of such coverage that would apply to any collision for which such coverage was available.

g.      Whether the class is entitled to declaratory or injunctive relief, or both, as described in the claim for declaratory or injunctive relief.

h.      Whether State Farm's actions had a significant public impact.

**Typicality:**

87.    The Class Representatives' claims are typical of those of other class members since, like the other class members:

a.    They owned multiple vehicles, each of which was insured by a separate policy issued by State Farm, for which they or an Other Named Insured had rejected UM/UIM coverage on all but one of such multiple policies using Rejection Form(s) that State Farm provided, which did not disclose the Stacking Information;

b.    They or the Other Named Insured who signed the State Farm Rejection Form(s) justifiably relied on State Farm to disclose on the Rejection Form all material information related to each of their or Other Named Insureds' decisions about whether to reject UM/UIM coverage on one or more vehicles by signing the Rejection Form, which should have included the Stacking Information;

c.    They were injured in a collision, caused by the fault of an uninsured or underinsured motorist, in which they sustained bodily injury;

d.    They suffered damage and losses, including bodily injury, that exceeded the UM/UIM bodily injury coverage limits available under their single policy providing such coverage;

e.    They could have recovered more benefits on their UM/UIM claim if they or an Other Named Insured had not rejected such coverage on all but one of multiple policies;

f.    They ultimately recovered only part of the benefits that they would have recovered in their UM/UIM claim with State Farm, if they or an Other Named Insured had not signed one or more State Farm Rejection Forms and rejected UM/UIM coverage on all

but one of multiple policies.

**Adequacy of Representation:**

88.    The Class Representatives will fairly and adequately represent and protect the interests of the members of the class.

89.    Their counsel is competent and experienced in litigating class actions.

**Predominance:**

90.    State Farm has engaged in a common course of conduct toward the Class Representatives, class members, and Other Named Insureds, in that

    a.    State Farm engaged in the same deceptive trade practice with each of the Class Representatives, class members, and Other Named Insureds,

    b.    causing each of the Class Representatives and class members to be harmed or injured in the same way, viz:

        1.    suffering the loss of the potential opportunity or ability to stack the UM/UIM coverage limit provided on the policies where such coverage was rejected, and

        2.    thereby losing the chance to increase the total amount of such coverage that would be available to apply to any collision.

91.    The common issues arising from State Farm's conduct affecting Class Representatives and class members set out above predominate over any individualized issues.

92.    Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

**Superiority:**

93.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

94.    Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.

95.    Absent a class action, most class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.

96.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varied adjudications with respect to individual class members, which would establish incompatible standards of conduct for State Farm.

97.    In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial and the parties' resources, and protects the rights of each class member.

98.    State Farm has acted in ways that apply generally to the class as a whole, so that class certification and injunctive or declaratory relief are appropriate on a class-wide basis.

99.    Likewise, particular issues are appropriate for certification since such claims present only particular, common issues of law or fact, the resolution of which would advance disposition of this matter and the parties' interests therein.

100.    Along with those issues stated above under the Commonality and Typicality headings, such particular issues include:

    a.    Whether State Farm engaged in a deceptive trade practice through the use

of its Rejection Form as described elsewhere in this Complaint;

b.     Whether State Farm intentionally omitted the Stacking Information from its Rejection Form;

c.     Whether State Farm knew the Stacking Information before it prepared and used its Rejection Form;

d.     Whether State Farm omitted the Stacking Information from the Rejection Forms with intent to induce Colorado consumers, including the Class Representatives, class members, and Other Named Insureds to reject UM/UIM coverage on all but one of multiple policies in connection with entering into transactions for the sale of policies;

e.     Whether the Class Representatives, class members, and Other Named Insureds justifiably relied on State Farm to disclose on the Rejection Forms all material information related to the policies, which should have included the Stacking Information.

f.     Whether State Farm's actions had a significant public impact.

**Ascertainability:**

101.     All members of the proposed class are readily ascertainable since:

a.     State Farm has access to the class members' names and contact information.

b.     State Farm has previously paid policy limits on one or more policies for each class member.

c.     And the class members can be notified by State Farm of the certification of a class if the court certifies this class and orders State Farm to do so.

**CLASS MEMBERS' INJURIES**

102.     As the result of State Farm's deceptive trade practices, the Class Representatives

and class members have been damaged by having inadequate UM/UIM bodily injury coverage to compensate them for their UM/UIM claims, following rejection of UM/UIM coverage on all but one of multiple policies by them or Other Named Insureds.

103.    While the common issues of law and fact described above can be decided as a class, the individual damages of each of the Class Representatives and class members must be determined separately.

104.    Each of the Class Representatives and class members also has a right to recover their attorney fees and costs under the CCPA.

105.    They are also entitled to recover both pre- and post-judgment interest on their damages to compensate them for the lost time-value of the money they would have recovered on their claims at an earlier date if State Farm had not engaged in this deceptive trade practice.

## CLAIMS FOR RELIEF

### Claim 1 – CCPA

106.    The Class Representatives re-allege and incorporate by reference the allegations above as if fully stated in this sentence.

107.    The Colorado Consumer Protection Act (CCPA) prohibits insurers like State Farm from engaging in deceptive trade practices.

108.    Under §6-1-105(1)(u), C.R.S., which is part of the CCPA, it is a deceptive trade practice if a corporation "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction."

109.    State Farm had a statutory duty not to engage in a deceptive trade practice in

violation of C.R.S. 6-1-105 (1)(u).

110.    State Farm breached such statutory duty by failing to disclose in the Rejection Form the Stacking Information, which was material information that was known to State Farm, and doing so with the intent to induce Class Representatives, class members, and Other Named Insureds, as Colorado consumers, to reject UM/UIM coverage on all but one of multiple policies in connection with entering into transactions for State Farm's sale of the policies to the Class Representatives, class members, and Other Named Insureds.

111.    Stated differently, an insurer engages in a deceptive trade practice in violation of the CCPA by failing to disclose material information known to the insurer, and in doing so to intends to induce its customers/consumers to reject UM/UIM coverage on all but one of multiple policies in connection with entering into transactions for the sale of such policies.

112.    The Class representatives and class members were consumers of State Farm's products/services and were injured because of State Farm's deceptive trade practices as described herein.

113.    The second paragraph of the Rejection Form (beginning "Uninsured Motorist Coverage for bodily injury") essentially states that UM/UIM bodily injury coverage provided on a single policy will afford coverage to a named insured injured in any crash for which that coverage is payable for that bodily injury; that the vehicle for which UM/UIM coverage was provided does not have to be involved in the crash; and therefore a named insured would not derive any potential benefit from having UM/UIM coverage provided on more than one of multiple policies.

114.    That second paragraph, and the rest of the Rejection Form, conspicuously fails to disclose that there is a trade-off to having UM/UIM coverage on just one of multiple policies: the

loss of the potential opportunity to stack the maximum UM/UIM coverage limit on multiple policies and thereby increase the total amount of such coverage that would be available for recovery by an insured under the UM/UIM policies for bodily injury suffered in any collision.

115.    The ability of a named insured to aggregate or combine coverage provided on separate policies is referred to as "stacking," and Colorado law expressly allows for stacking of UM/UIM bodily injury limits available on separate policies.

116.    Unlike the policies issued by other insurers that issue a single policy for all vehicles it insures for a particular customer/consumer, State Farm's policies permit stacking because State Farm issues a separate policy for each vehicle it insures for a particular customer/consumer.

117.    The Stacking Information is, and at all relevant times was, material information that State Farm has a statutory duty not to fail to disclose in its Rejection Form since this Stacking Information could materially affect a named insured's decision about whether to reject UM/UIM coverage on all but one of their State Farm policies.

118.    State Farm's failure to disclose the Stacking Information in the Rejection Form conceals the fact that UM/UIM bodily injury coverage on multiple policies provides the potential beneficial opportunity to aggregate or stack such coverages and thereby increase the total amount of coverage that would apply to any collision in which a named insured sustains bodily injury, caused by the fault of an uninsured or underinsured motorist.

119.    By omitting the Stacking Information from its Rejection Form, State Farm created the false or misleading impression that its customers/consumers would derive no meaningful benefit from having UM/UIM bodily injury coverage on more than one of their State Farm vehicle insurance policies, whereas having the potential opportunity for stacking the UM/UIM coverage

limits on multiple policies is a meaningful benefit they would (and did) give up by signing the Rejection Forms.

120.    State Farm had a statutory duty not to fail to disclose the material Stacking Information in its Rejection Form with the intent of inducing the Class Representatives, class members, and Other Named Insureds, to reject UM/UIM coverage on all but one of multiple policies.

121.    By omitting the Stacking Information from the Rejection Form, with the intent of inducing the Class Representatives, class members, and Other Named Insureds to reject UM/UIM coverage on all but one of multiple policies in connection with entering into transactions for the sale of such policies, State Farm has engaged in a deceptive trade practice.

122.    On information and belief, State Farm profited from this deceptive trade practice.

123.    On information and belief, State Farm profited since its employees and agents could quote lower total premium amounts for insuring multiple vehicles belonging to its existing or potential customers/consumers.

124.    On information and belief, in Colorado, State Farm issues more auto or motor vehicle policies for passenger vehicles than any other insurer that is licensed to issue such policies in the state.

125.    On information and belief, State Farm profited by inducing customers/consumers to purchase coverage from State Farm rather than from State Farm's competitors, because by offering less coverage (at a reduced premium cost) than would otherwise have been available to existing or potential customers/consumers had UM/UIM coverage not been rejected on all but one policy, it was able to quote lower overall premiums as a means of competing with its competitors.

126.     On information and belief, by doing so, State Farm not only increased the number of its customers/consumers but also took business from its competitors.

127.     On information and belief, State Farm and the Class Representatives, class members, or Other Named Insureds who signed the Rejection Forms were in an uneven bargaining position since State Farm is an insurer who is required to know about the Stacking Information and the Class Representatives, class members, and Other Named Insureds who signed the Rejection Forms were relatively unsophisticated than State Farm was in such matters.

128.     The allegations in the previous five paragraphs and elsewhere in this Complaint show a significant public impact.

129.     On information and belief, State Farm has also profited from this deceptive trade practice by avoiding having to pay stacked UM/UIM bodily injury policy limits on multiple policies to its insureds who had suffered extensive bodily injury and other damages and losses in a collision.

130.     After being presented a Rejection Form or Forms by a State Farm agent or the agent's employees, each of the Class Representatives, class members, and Other Named Insureds signed one or more Rejection Forms to reject UM/UIM coverage on all but one of multiple policies.

131.     Sometime after signing the Rejection Form, and after paying premiums and being insured by State Farm, each of the Class Representatives, class members, and Other Named Insureds suffered bodily injury, damage, and losses in a crash, for which State Farm paid UM/UIM bodily injury policy limits to them.

132.     Each of the Class Representatives and class members would have benefitted from

having UM/UIM bodily injury coverage available on all of their multiple policies and thereby having the chance to stack the UM/UIM coverage limits on multiple policies.

133. The Class Representatives and class members did not have that additional coverage because State Farm engaged in the deceptive trade practice described above.

134. In sum, the Class Representatives allege for themselves and on behalf of the class that Defendant State Farm engaged in a deceptive trade practice when it failed to disclose in its Rejection Form the Stacking Information, of which it had knowledge, and of which its customers/consumers lacked knowledge, and State Farm did so with the intent to induce the Class Representatives, class members, and Other Named Insureds, who were Colorado consumers, to reject UM/UIM coverage on all but one of multiple policies in connection with entering into transactions for the sale/purchase of insurance policies, which resulted in State Farm's providing UM/UIM coverage on only one of multiple policies purchased by the Class Representatives, class members, and Other Named Insureds.

135. As a direct and proximate result of State Farm's violation of the CCPA, the Class Representatives and class members suffered an injury in fact to a legally protected interest by losing the potential opportunity to recover additional benefits after stacking the UM/UIM coverage limits on multiple policies, and so they are entitled to a judgment against State Farm for the greater amount of their actual damages sustained or five hundred dollars, along with their reasonable attorney fees and costs incurred in pursuing this class action as allowed under the CCPA, all other damages available to them under the CCPA or the common law, injunctive and declaratory relief as requested elsewhere in this Complaint, and such other relief as the Court deems just and proper.

**Claim 2 – Declaratory or Injunctive Relief**

136.    The Class Representatives re-allege and incorporate by reference the allegations above as if fully stated in this sentence.

137.    Under the Declaratory Judgment Act, § 13-51-101, C.R.S., et seq. and C.R.C.P. 57, this Court has authority to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief.

138.    It also has broad authority to grant injunctive relief, to restrain acts, and to reform insurance policies to address the violation of statutes and undo the results of State Farm's deceptive trade practices.

139.    Actual controversies exist here with respect to whether State Farm engaged in deceptive trade practices and, if so, whether that injured or harmed the Class Representatives and class members in the past and whether it will similarly injure or harm other Colorado consumers in the future.

140.    The Class Representatives and the class members have been injured or harmed by State Farm's use of the Rejection Form.

141.    The Class Representatives also allege that, in the future, State Farm's use of the Rejection Form may again injure or harm them, other class members, Other Named Insureds, and other State Farm policyholders in Colorado.

142.    Under its authority granted by the Declaratory Judgment Act and Rule 57 and its power in equity, this Court should enter a judgment declaring, inter alia, that:

      a.    Each of the Rejection Forms executed by Colorado consumers since those forms were first used is null and void.

b.    All policies affected by those Rejection Forms that have been signed by Colorado consumers are reformed to include UM/UIM bodily injury coverage at limits equal to the liability bodily injury limits on those same policies.

143.    If no declaratory or injunctive relief is granted, the Class Representatives, class members, and Other Named Insureds will suffer irreparable injuries and will lack an adequate legal remedy if and when they sustain bodily injuries in future collisions, caused by the fault of uninsured or underinsured motorists, and the legal compensation to which they are entitled to recover for their bodily injuries exceeds their UM/UIM bodily injury policy limits on the policies now in place.

144.    The hardship to the Class Representatives, class members, and Other Named Insureds if declaratory or injunctive relief is not granted exceeds the hardship to State Farm if an injunction is granted since State Farm will continue to profit from its deceptive trade practices in violation of the CCPA and the Class Representatives, class members, and Other Named Insureds will continue to remain underinsured in the event they are in crashes for which their bodily injuries, damages, and losses would exceed one UM/UIM policy's limits and they could have stacked the coverage from additional policies to compensate them for some or all of the injuries, damages, and losses that would not be covered without such relief.

145.    Granting the requested declaratory or injunctive relief will ***not*** disserve the public interest.

146.    To the contrary, the requested declaratory or injunctive relief will serve the public interest by preventing State Farm from continuing to use its Rejection Forms to reap the rewards of its deceptive trade practices; and it will help ameliorate the distinct competitive advantage State

Farm has enjoyed against its market competitors with this deceptive trade practice.

## NOTICE UNDER § 13-17-201(2), C.R.S.

147.    Plaintiff's challenge seeks to extend and apply existing Colorado consumer protection law to abusive and misleading practices by an insurance company and is different from any other known claims related to the use of the Rejection Form that have previously been adjudicated since, as far as Plaintiffs' counsel know, no such actions have sought either class or individual relief under the Colorado Consumer Protection Act.

148.    This action also seeks to establish the meaning of the CCPA as it is alleged to apply to the Defendant's actions and omissions described above.

149.    So the Defendants would not be entitled to recover their attorney fees and costs if this action were dismissed on a C.R.C.P. 12(b)(5) motion (if the court would be inclined to award such fees and costs).

## ADVISORY NOTICE OF THE NAMED PLAINTIFFS' INTENT TO SEEK TREBLE DAMAGES UNDER THE CCPA IF THE COURT DOES NOT CERTIFY A CLASS

150.    The named plaintiffs hereby provide notice if the Court does not certify a class, they intend to amend the Complaint and seek treble damages under the CCPA.

## PRAYER FOR RELIEF

151.    WHEREFORE, the Plaintiffs pray for judgment as follows:

a.    For an Order certifying this action as a class action and appointing the Plaintiffs as Class Representatives and their below counsel to represent the class;

b.    For an award of damages or statutory penalties, or both, for each member of the class, including the Class Representatives, in an amount to be determined, as

allowable by law;

   c.  For equitable relief enjoining State Farm from engaging in the wrongful

conduct described above;

   d.  For declaratory relief as requested above;

   e.  For an award of attorney fees and costs, and all other expenses including

expert witness fees, as allowed under the CCPA,

   f.  For an award of pre- and post-judgment interest on any amounts awarded;

and

   g.  Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs and the Class demand a trial by a jury of six persons on issues so triable.

Dated December 19, 2023.

Respectfully Submitted,

By:    /s/ *Nelson Boyle*        
            Jonathan Stine, Reg. No. 38925
            Nelson Boyle, Reg. No. 39525
            The Paul Wilkinson Law Firm, LLC
            999 Jasmine Street, Third Floor
            Denver, Colorado 80020

            /s/ *John Springer*      
            John Springer, Atty. Reg. No. 3458
            15394 E. Monmouth Pl.,
            Aurora, Colorado 80015-1721

**Attorneys for Plaintiffs and the Class**

Plaintiffs' Addresses:

Nichole Clark
3889 S. Biscay Street
Aurora, CO 80013-3662

Valita A. Leonard
11251 Holly Street
Thornton, CO 80233-2864



**StateFarm**

**State Farm Mutual Automobile Insurance Company
State Farm Fire and Casualty Company**

## Colorado Uninsured Motor Vehicle Coverage
### (Acknowledgment of Coverage Selection or Rejection)

DATE FILED: December 21, 2023 1:34 PM
FILING ID: 0CD8CFC8C9A84
CASE NUMBER: 2023CV32430

Colorado law requires that each motor vehicle liability policy delivered or issued in Colorado insuring motor vehicles licensed for highway use in Colorado provide Uninsured Motor Vehicle Coverage. This coverage provides protection for persons insured who are legally entitled to recover damages for bodily injury, sickness, or disease, including death, from owners or operators of either uninsured motor vehicles or underinsured motor vehicles. The named insured may reject such coverage and such rejection must be in writing.

Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, selected on one policy insuring a motor vehicle owned and insured by you or any family member who resides in your household will apply to any accident for which the selected Uninsured Motor Vehicle Coverage is payable for that bodily injury, sickness, or disease, including death. The described vehicle on that one policy need not be involved in the accident for Uninsured Motor Vehicle Coverage to apply.

I acknowledge and agree that I have been offered Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, with limits equal to my bodily injury liability limits and instead I:

☐ reject Uninsured Motor Vehicle Coverage limits equal to my bodily injury liability limits and select lower Uninsured Motor Vehicle coverage limits of $ _____ / $ _____ on this policy.

☐ reject Uninsured Motor Vehicle Coverage on this policy.

The written selection or rejection of coverage by one named insured will be binding on all insureds.

I understand and agree that this acknowledgment of coverage selection or rejection shall be applicable to the policy of insurance on the vehicle described below, on all future renewals of this policy, and on all replacement policies, until I make a written request for additional coverage or for coverage more extensive than that provided on a prior policy.

_____  _____
Year of Vehicle          Make and Model of Vehicle

_____      _____      _____
Vehicle Identification Number      Application/Policy Number          Agent Code

_____
Named Insured(s)/Applicant(s)  (as appearing on the application or policy)

_____    _____
Signature of Any Named Insured/Applicant  (If a Business, a Company Representative should print and sign here)          Date



**State Farm Mutual Automobile Insurance Company**
**State Farm Fire and Casualty Company**

DATE FILED: December 21, 2023 1:34 PM
FILING ID: E7D8CFC8C9A84
CASE NUMBER: 2023CV32430

# Acknowledgment of Coverage Selection or Rejection

## Uninsured Motor Vehicle Coverage — Colorado

Colorado law requires that each motor vehicle liability policy delivered or issued in Colorado insuring motor vehicles licensed for highway use in Colorado provide Uninsured Motor Vehicle Coverage. This coverage provides protection for persons insured who are legally entitled to recover damages for bodily injury, sickness, or disease, including death, from owners or operators of either uninsured motor vehicles or underinsured motor vehicles. The named insured may reject such coverage and such rejection must be in writing.

Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, selected on one policy insuring a motor vehicle owned and insured by you or any family member who resides in your household will apply to any accident for which the selected Uninsured Motor Vehicle Coverage is payable for that bodily injury, sickness, or disease, including death. The described vehicle on that one policy need not be involved in the accident for Uninsured Motor Vehicle Coverage to apply.

**I acknowledge and agree that I have been offered Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, with limits equal to my Liability Coverage limits for bodily injury and instead:**

○ I reject Uninsured Motor Vehicle Coverage limits equal to my Liability Coverage limits for bodily injury and select lower Uninsured Motor Vehicle Coverage limits of $ _____ / $ _____ on this policy.
     Each Person                    Each Accident

● I reject Uninsured Motor Vehicle Coverage on this policy.

I understand and agree that, unless a named insured makes a written request for additional coverage or for coverage more extensive than that provided on a prior policy, this acknowledgment of coverage selection or rejection shall be:

(1) binding on all persons insured under the policy; and

(2) applicable to the policy of insurance on the vehicle described below and to any renewal or replacement policy issued by the same insurer or affiliated insurer.

Year of vehicle _____  Make and model of vehicle _____

Vehicle Identification Number _____  Application/Policy number _____  Agent code _____

Named insured(s)/Applicant(s) (as appearing on the application or policy)

Signature of any Named Insured/Applicant _____   Date (MM/DD/YYYY) _____   [SIGNATURE]
(If a business, a company representative should print and sign here)

1003474 CO.9                                                                                   2002 144818 200 04-29-2016